**Mrs. Billie McKINNEY et al., Appellants,**

**v.**

**TEXAS BANK & TRUST CO., Guardian, Appellee.**

**No. 15165.**

Court of Civil Appeals of Texas.

Dallas.

Oct. 26, 1956.

Rehearing Denied Nov. 23, 1956.

R. L. Crosier, Dallas, for appellants.

John R. Anthony and James W. Yancy, Jr., Houston, and Barefoot Sanders, Jr., Dallas, amici curiæ.

Eric Eades, Dallas, for appellee.

CRAMER, Justice.

This is a duly perfected appeal, in a probate matter, from a judgment denying appellant an allowance for the care, etc., of the ward (appellant's husband); herself, and appellant's dependent mother, and for purpose of paying the installments on the balance of approximately $3,250 due on their home. The facts are set out in an agreement pursuant to Rule 378, Texas Rules of Civil Procedure, and are as follows:

"This cause originated in the Probate Court of Dallas County, Texas, upon a petition filed in this guardianship cause by Mrs. Billie McKinney praying that Texas Bank & Trust Company of Dallas, guardian, be authorized and directed to provide a reasonable regular monthly allowance from this estate for the ward and certain of his dependents and to pay off with guardianship funds an existing indebtedness due and owing on the ward's home. From the judgment of the Probate Court denying such petition in its entirety, an appeal was taken to the 116th Judicial District Court of Dallas County, Texas, where the matter was submitted to the court upon the following agreed stipulation of facts:

"(1) On the 21st day of June, 1949, the Texas Bank & Trust Company of Dallas was appointed guardian of Charles E. McKinney, a person for whom the appointment of a guardian was necessary to receive funds from the Veterans Administration, an Agency of the United States. The said Charles D. (E.) McKinney has never been adjudged insane or found incompetent by any court in the State of Texas nor has any sort of citation or notice been issued and served upon the said Charles E. McKinney notifying him that any allegations had been made to the effect that he was incompetent or insane, in this or any other proceedings.

"(2) The said Charles E. McKinney is a former member of the Naval forces of the United States and as such has been ever since and prior to the appointment of said bank as guardian entitled to receive funds from the Veterans Administration, an agency of the United States, and that said bank has in its hands funds or liquid securities purchased with funds paid to it by the Veterans Administration in approximately the sum of $5,000 and is receiving compensation at the rate of $175.80 per month.

"(3) That Billie McKinney is the wife of the said Charles E. McKinney and that Mrs. Mattie Graham is his mother; that the said Mrs. Mattie Graham at the time and prior to the appointment of the aforesaid guardian was a member of the ward's household and was dependent upon him and was and is the dependent mother of said ward.

"(4) That said ward and his wife, without the knowledge and consent of said bank as such guardian, purchased certain real estate lying and being situated in the city and county of Dallas, State of Texas, and paid for the same out of funds other

than those received by the aforesaid guardian; that said ward and his wife made and executed a mechanic's lien upon their homestead for the purpose of erecting thereon a house in which they now reside and upon which there is a balance due of approximately $3,250; that the said ward and his wife and his dependent mother are in need of funds to provide for their support and maintenance and that it would be to the best interest of said ward to have the aforesaid mortgage on his home paid off and satisfied.

"Except for the foregoing stipulation no evidence was admitted by the court and neither party sought to introduce any additional evidence with the exception of the tender by Billie McKinney of evidence to show the incompetency of the ward, Charles E. McKinney, as evidenced by her Bill of Exception No. 1."

Both appellant and appellee grouped points 1 and 5 for discussion and argument. These points involve the question of the necessity of notice or citation to the ward before adjudging him incompetent.

Section 228 of the Probate Code, V.A.T. S., limits the authority of guardians appointed to receive funds from a governmental agency. Such section sets out the authority such a guardian shall have and provides that such a guardian shall have only the authority specified. The powers specified are: (1) to receive and receipt for the funds due the ward from the governmental agency; (2) hold same; (3) pay costs in connection with collecting the funds; (4) account to the court for such funds; and (5) pay the remainder to the ward or (6) if the ward be mentally incompetent, use such portion of the funds for his support as the court may authorize.

The section then further declares that such a guardian shall not be considered guardian of the estate of such person. This is also indicated by Section 193 of the Code, requiring bonds in cases of this kind to be limited in amount and condi-

tioned that the guardian will faithfully discharge the duties of the person of such ward.

■ Here it is agreed by the parties that the ward has never been adjudged incompetent. The guardian was appointed solely for the purpose of receiving funds due the ward by the Veterans Administration. It was not alleged in the petition for appointment, nor was there anything in the citation served on the ward indicating that anyone claimed or alleged him to be incompetent or insane. So far as the record discloses, the first and only time it was alleged that the ward was incompetent was in appellant's petition filed in the probate court seeking an order directing the guardian to use the funds collected by it for his support. No new notice or citation was served upon the ward with respect to this new petition. The question now before this court is whether or not, (1) the provision in Section 228 of the Probate Code authorizing the court to direct the guardian to use funds for the support of the ward if he *"is mentally incompetent"* means that the ward is to be judicially found incompetent and (2) if it does, then whether such a finding may be made by the court without citing the ward and giving him an opportunity to be heard with respect to that issue.

We are of the opinion the statute means that before the guardian may be authorized and empowered to use the fund for the ward's support and maintenance he must have been judicially found to be incompetent after timely service of process upon him. The statute provides, in substance, that if the ward is competent the guardian shall turn over to him the funds collected, but if the ward be incompetent, then the guardian may use such portion of the funds as the court may authorize for his support and maintenance. In other words, if the ward be competent, all the funds will be turned over to him and he will provide for the support of himself and his dependents and pay off

mortgages on his real estate if he desires to do so. Section 228 of the Probate Code, however, will not, in our opinion, permit a guardian to pay out funds of the ward except as therein specified, i. e., turn over the funds to the ward if he be competent of if he be incompetent, use such portion of the funds as the court may authorize for his support and maintenance. Allowances for the support of dependents, and to pay off mortgages, may not be authorized under the provisions of said Section 228.

For the reasons indicated, appellant's points 1 and 5 are overruled.

■ Appellant's points 2 and 3 assert error on the part of the trial court in denying appellant's petition for an order directing the guardian to provide allowance for the support of the ward's wife and mother.

As we have pointed out already, if the ward is competent, the statute makes it the duty of the guardian to turn over all the funds, less costs, to the ward so that he may support himself and his dependents and otherwise use his funds as he may deem proper. If he is found incompetent, then only the ward may be supported and maintained to the extent authorized by the court in this type of guardianship. If the ward has sufficient funds to provide support for himself and his dependents and to invest in real or personal property, a general guardian, whose authority in such matters under proper orders of the court would be unquestioned, should be appointed and qualified.

A careful analysis of Section 228 and other pertinent provisions of the Probate Code leads us to believe that the legislature did not intend the special guardians, appointed for the purpose of receiving funds from governmental agencies, to function as general guardians. Where, as alleged in this case, the ward is incompetent, and funds are on hand and payable in excess of what is necessary for the support of the ward, it would seem to be a relatively simple and inexpensive procedure to have a general guardian qualified who could, without question, be given such powers as are necessary to enable him to provide for the needs of the ward's dependents as well as to make suitable investments of surplus funds.

For the reasons indicated above we believe appellant's points 2 and 3 should be, and they are overruled.

■ This leaves only point 4 to be disposed of. By this point, appellant asserts error on the part of the court in refusing to direct the guardian to pay off and satisfy a mortgage debt alleged to be due upon the homestead of the ward and his wife. For the reasons set forth above in our discussion of points 2 and 3, point 4 is overruled.

■ Amicus curiæ in a well prepared brief argue that because the funds were paid by the Federal Government for the support of the ward and his dependents the guardian should be permitted to use the funds for such purposes and that any other construction of our statutes would be contrary to the intention of Congress in enacting the beneficial legislation providing for payments for their support and their families. This same contention was made in the case of Anderson v. Steddum, Tex. Civ.App., 194 S.W. 1132—affirmed by the Supreme Court in Tex.Com.App., 222 S.W. 1090. In that case the court said that when the funds were paid to the guardian appointed under the laws of the State of Texas, such funds could only be expended by such guardian in conformity to the laws of this state. The same question arose again in this court in the case of Bagwell v. McCombs, Tex.Civ.App., 31 S. W.2d 835, 837. In that case this court said:

"It may be admitted, as pleaded by appellant * * * that much of the expenditures made by him were for necessaries * * * and were such as are contemplated by the Federal Act (38 U.S.

C.A. § 451 et seq.) authorizing the allowance, but the act commits to the laws of the state the conditions under which such expenditures may be legally made, and does not attempt to control same. Anderson v. Steddum, supra."

The judgment appealed from is for the reasons stated,

Affirmed.